2009 UT 30

**STATE of Utah, in the interest of A.C.M.,
a person under eighteen years of age.**

**M.W., T.W., and R.S., Petitioners
and Appellees,**

v.

**A.N., Respondent and Appellant.**

No. 20070849.

Supreme Court of Utah.

May 29, 2009.

See also, 148 P.3d 927.

Larry S. Jenkins, Lance D. Rich, Salt Lake City, for appellees Matthew & Toni Lee Worthington Sophia Moore, Salt Lake City, for appellee Rachel Sullivan.

David S. Dolowitz, Dena C. Sarandos, Joshua K. Peterman, Salt Lake City, for appellant Martha Pierce, Salt Lake City, for the Office of the Guardian ad Litem.

PARRISH, Justice:

## INTRODUCTION

¶ 1 Arturo Nuosci appeals the juvenile court's order terminating his parental rights over A.C.M. We affirm.

## FACTS

¶ 2 A.C.M., a minor child, has lived with Matt and Toni Worthington since October 2004, when he was three months old. He began living with the Worthingtons after his biological father, Mr. Nuosci, was arrested by federal agents on numerous charges. Upon Mr. Nuosci's arrest, A.C.M.'s biological mother, Rachel Sullivan, took custody of A.C.M., even though she had previously relinquished her parental rights pursuant to a surrogacy agreement with Mr. Nuosci. Shortly thereafter, she placed A.C.M. with the Worthingtons for the purposes of adoption and again relinquished her rights.

¶ 3 The Worthingtons filed an adoption petition in the district court in November 2004, which was subsequently contested by both Mr. Nuosci and Ms. Sullivan. The district court found that neither of Ms. Sullivan's relinquishments of parental rights were valid, the first because it was improperly executed and an extension of an illegal surrogacy contract and the second because it was improperly executed. Though the district court found that both Mr. Nuosci and Ms. Sullivan were proper interveners in the adoption proceeding, and did not find either to be unfit, it awarded permanent custody to the Worthingtons under a best interests of the child analysis. In October 2006, this court reversed the district court's ruling, holding that although the Worthingtons may be the appropriate party to have temporary custody while A.C.M.'s permanent status is determined, the court could not permanently award custody to them because they were "legal strangers" to A.C.M., and neither biological parent had been found unfit. *A.N. v. M.I.W. (In re P.N.)*, 2006 UT 64, ¶ 15, 148 P.3d 927.

¶ 4 Mr. Nuosci responded to this court's ruling in November 2006 by filing a petition for permanent custody in the district court where the failed adoption petition was heard. Before the district court ruled on Mr. Nuosci's petition, Ms. Sullivan and the Worthingtons filed a joint petition in juvenile court to terminate Mr. Nuosci's parental rights. The district court then stayed proceedings pending resolution of the juvenile court action. Following a two-day trial, the juvenile court ruled that Mr. Nuosci's rights should be terminated. It found that Mr. Nuosci's history of deceptive criminal conduct, including the numerous federal felonies to which Mr. Nuosci pleaded guilty in 2005 and several prior convictions in Canadian courts, demonstrated his unfitness to parent A.C.M., par-

ticularly because he had engaged in criminal conduct in the months just prior up to A.C.M.'s birth and had used A.C.M. to legitimize his existence under an assumed name. The criminal convictions deprived A.C.M. of a normal home and relationship with Mr. Nuosci during his nearly three-year prison sentence and, as a result, A.C.M. formed no bond or emotional attachment to Mr. Nuosci. The juvenile court further found that, as a result of his criminal convictions, Mr. Nuosci had been permanently deported to Canada and requiring A.C.M. to develop a relationship with his father "would be severely disruptive to [A.C.M.'s] physical, mental, and emotional condition." As additional support for the decision to terminate Mr. Nuosci's parental rights, the district court mentioned Mr. Nuosci's abusive behavior toward his ex-domestic-partner, Lonnie James, and toward Ms. Sullivan, finding that Mr. Nuosci has a history of violent behavior. Mr. Nusoci filed this appeal. We have jurisdiction under Utah Code section 78A–3–102(3)(b).

¶ 5 During the pendency of the petition to terminate Mr. Nuosci's parental rights, the Worthingtons and Ms. Sullivan appeared to be working toward a permanent custody solution. By August 2007, A.C.M. was occasionally spending the night at Ms. Sullivan's home. However, around Labor Day 2007, their relationship disintegrated. After the juvenile court announced its order terminating Mr. Nuosci's rights, but before the written order issued, Ms. Sullivan filed a petition for sole custody of A.C.M., and the Worthingtons filed a petition to terminate Ms. Sullivan's parental rights. The juvenile court has not yet held a hearing on either of these petitions.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Mr. Nuosci appeals on several grounds. First, he argues that the juvenile court did not have jurisdiction to hear a petition to terminate his parental rights because the district court had previously considered a contested adoption petition regarding A.C.M. Whether jurisdiction is proper is a legal question that we review for correctness, giving no deference to the lower court's

determination. See *State v. Moreno*, 2009 UT 15, ¶ 7, 203 P.3d 1000.

¶ 7 Second, Mr. Nuosci argues that because the juvenile court previously considered his fitness and did not terminate his parental rights, the doctrine of res judicata bars relitigation of his fitness. The application of res judicata is a legal determination, and we review for correctness the juvenile court's decision not to apply it in this case. *Grynberg v. Questar Gas Pipeline Co.*, 2003 UT 8, ¶ 21, 70 P.3d 1.

¶ 8 Finally, Mr. Nuosci alleges the following deficiencies with the juvenile court's order and proceedings: that the court did not have sufficient grounds to terminate his rights, that it did not consider A.C.M.'s best interests, and that it did not consider his present ability and willingness to function as a parent. "Whether a parent's rights should be terminated presents a mixed question of law and fact." *State ex rel. B.R. v. S.M.*, 2007 UT 82, ¶ 12, 171 P.3d 435. We afford great deference to the juvenile court's findings of fact and overturn the result only if the facts are against the clear weight of the evidence. *Id.* We review the juvenile court's interpretation of the Termination of Parental Rights Act for correctness. *State ex rel. V.H. v. State*, 2007 UT App 1, ¶ 10, 154 P.3d 867.

¶ 9 Before we address these issues, we first address the guardian ad litem's argument that the order terminating Mr. Nuosci's rights was not a final and appealable order, thereby depriving this court of jurisdiction to hear his appeal. We then address each of Mr. Nuosci's substantive contentions.

## ANALYSIS

### I. THE ORDER TERMINATING MR. NUOSCI'S PARENTAL RIGHTS IS FINAL AND APPEALABLE

¶ 10 The guardian ad litem's office argues that Mr. Nuosci cannot appeal the district court order terminating his parental rights because the order is not final. We disagree. The order terminating Mr. Nuosci's parental rights permanently affects A.C.M.'s rights vis-a-vis his father and is

therefore final and appealable. "[A]n appeal may be taken from the juvenile court ... from a final judgment, order, or decree." Utah R. Juv. P. 52(a). However, absent certification by the adjudicating court, "any order ... that adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties" cannot be appealed. Utah R. Civ. P. 54(b). Various procedural rules allow appeals only from final judgments, and Utah Rule of Appellate Procedure P. 3(a) specifies that this court's jurisdiction extends only over final judgments. However, " '[i]n child welfare proceedings, unlike traditional civil cases, appeals may be heard from more than one final judgment.' " *State ex rel. A.F. v. State*, 2006 UT App 200, ¶ 8, 138 P.3d 65 (quoting *State ex rel. S.A.K. v. State*, 2003 UT App 87, ¶ 13, 67 P.3d 1037). This difference does not stem from a different application of or exception to the final judgment rule, but rather from the unique nature of juvenile court jurisdiction, which often continues after a final judgment is rendered.[1] *See In re Doe*, 77 Hawai'i 109, 883 P.2d 30, 35 (1994) ("[A] final judgment or decree is not necessarily the last decision of a case." (internal quotation marks omitted)); *N.D. v. B.J.D.*, 857 S.W.2d 835, 842–43 (Mo.Ct.App. 1993) (holding that the court's denial of custody to the mother and the later termination of parental rights constituted separate final orders of the juvenile court).

¶ 11 In child welfare cases, we draw the definition of an action narrowly because the best interests of the child outweigh the interests of judicial economy. *State ex rel. S.A.K.*, 2003 UT App 87, ¶ 13, 67 P.3d 1037. When the effect of an order is "to immediately implement a change in the permanent status of the child[ ], and ... require[s] no further judicial action to be final," the action before the lower court has concluded and the order may be appealed. *C.M.F. v. State*, 2007 UT 69, ¶ 6, 167 P.3d 1070.

¶ 12 The guardian ad litem's office argues that termination of Mr. Nuosci's parental rights is not a final appealable order because Ms. Sullivan's parental rights have not yet been adjudicated and A.C.M. has not been permanently placed. We have previously stated that "termination of parental rights is final and appealable because it constitutes a change in the child's status in that it changes the child's legal relationship with his or her parents." *Id.* ¶ 3. We therefore treat the termination of each parent's rights separately for purposes of finality and appealability.[2]

¶ 13 The petition to terminate Mr. Nuosci's rights was a separate and discrete action brought and resolved prior to any dispute between Ms. Sullivan and the Worthingtons concerning Ms. Sullivan's parental rights. The substance and effect of the juvenile court's order terminating Mr. Nuosci's rights left no further question for the court to resolve vis-a-vis Mr. Nuosci. The court's continuing jurisdiction over A.C.M.'s permanent placement does not affect the finality of the court's order terminating Mr. Nuosci's rights, nor does the fact that the petition to terminate his rights shares a case number with the currently pending petition to terminate Ms. Sullivan's rights. We therefore conclude that we have jurisdiction to review the termination order.

## II. THE JUVENILE COURT HAD JURISDICTION TO HEAR THE PETITION TO TERMINATE MR. NUOSCI'S PARENTAL RIGHTS

¶ 14 Mr. Nuosci argues that the juvenile court lacked jurisdiction to terminate his parental rights because a petition to adopt A.C.M. had previously been filed with the district court. We disagree. Because the adoption proceeding in district court had been dismissed, it was proper for the Worthingtons and Ms. Sullivan to file their petition to terminate Mr. Nuosci's parental

---

1. Cases from other jurisdictions emphasize that an exception to the finality rule is appropriate because of the fundamental liberty interest at stake when the state deprives parents of their children. *See, e.g., In re Doe*, 77 Hawai'i 109, 883 P.2d 30, 35 (1994); *In re Murray*, 52 Ohio St.3d 155, 556 N.E.2d 1169, 1172 (1990). Rather than creating an exception to the finality rule, we instead find that the parent's fundamental liberty interest offers further support for construing narrowly the boundaries of what constitutes an action brought in juvenile court.

2. If a proceeding to terminate the other parent's rights remains pending and there is significant overlap in the facts underlying both termination petitions, any party to the action may move to consolidate them.

rights in juvenile court. "[T]he juvenile court has exclusive, original jurisdiction in proceedings concerning . . . the termination of the legal parent-child relationship. . . ." Utah Code Ann. § 78A–6–103(1)(g) (2008).[3] However, in cases where the termination of parental rights takes place in the context of a contested adoption, the district court has jurisdiction to terminate parental rights. *Id.* § 78B–6–133(2) (2008). In a contested adoption proceeding, the district court does not have discretion to transfer the proceeding to juvenile court to determine "whether the rights of the contesting party . . . may be terminated." *K.B. v. D.P. (In re B.B.G.)*, 2007 UT App 149, ¶ 11, 160 P.3d 9. Though a district court judge cannot transfer an adoption proceeding to juvenile court because the juvenile court does not have "concurrent jurisdiction over parental termination questions that arise in the context of contested adoption proceedings originating . . . in the district court," the current termination proceeding against Mr. Nuosci did not arise in a contested adoption proceeding in the district court. *Id.*

¶ 15 The Worthingtons' petition to adopt A.C.M. was dismissed in June 2006 when the district court erroneously awarded permanent custody to the Worthingtons. And our opinion regarding that error did not affect the validity of the district court's dismissal of the adoption proceeding. In fact, our opinion makes clear that the adoption petition "has been dismissed, and the dismissal was not challenged on appeal." *A.N. v. M.I.W. (In re P.N.)*, 2006 UT 64, ¶ 18, 148 P.3d 927. Because the dismissal of the adoption proceeding ended any jurisdiction the district court had over the termination of Mr. Nuosci's parental rights, the termination petition was properly filed in the juvenile court.

## III. RES JUDICATA DOES NOT PREVENT A SUBSEQUENT TERMINATION OF PARENTAL RIGHTS HEARING UNLESS THERE HAS BEEN NO CHANGE IN CIRCUMSTANCES

¶ 16 Relying on the theory of res judicata, Mr. Nuosci next argues that the district court's refusal to terminate his parental rights during the contested adoption proceeding bars future petitions to terminate his rights. However, res judicata does not apply to this petition to terminate Mr. Nuosci's rights, which was filed over two years after the district court's decision and which was based on newly discovered evidence and facts occurring in the intervening years.

■■■■ ¶ 17 Res judicata prevents both the relitigation of previously litigated claims between two parties and the "relitigation of issues that have been decided, though the causes of action or claims for relief are not the same." *P.D.C. v. D.J.C.R. (State ex rel. S.D.C.)*, 2001 UT App 353, ¶ 12, 36 P.3d 540 (internal quotation marks omitted). These two branches of res judicata, claim preclusion and issue preclusion, limit the parties to one fair trial of an issue or cause, allow for reliance on previous litigation, prevent inconsistent decisions, save parties the expense and hassle of multiple lawsuits, and conserve judicial resources. *State ex rel. J.J.T.*, 877 P.2d 161, 162 (Utah Ct.App.1994). To invoke claim preclusion, a party must satisfy three requirements.

> First, both cases must involve the same parties or their privies. Second, the claim that is alleged to be barred must have been presented in the first suit or must be one that could and should have been raised in the first action. Third, the first suit must have resulted in a final judgment on the merits.

*State ex rel. S.D.C.*, 2001 UT App 353, ¶ 13, 36 P.3d 540 (internal quotation marks omitted). For issue preclusion to apply, a party must satisfy four requirements.

> [First,] the party against whom issue preclusion is asserted must have been a party to or in privity with a party to the prior adjudication; [second,] the issue decided in the prior adjudication must be identical to the one presented in the instant action; [third,] the issue in the first action must

---

**3.** For ease of reference, we have used the most recent numbering scheme for the statutes at issue.

have been completely, fully, and fairly litigated; and [fourth,] the first suit must have resulted in a final judgment on the merits.

*Culbertson v. Bd. of County Comm'rs*, 2001 UT 108, ¶ 25, 44 P.3d 642 (internal quotation marks omitted).

██ ¶ 18 In the context of petitions to terminate parental rights, we have applied a flexible res judicata analysis. "[T]o effectively determine the best interests of a child, a court must be free from the imposition of artificial constraints that serve merely to advance the cause of judicial economy." *State ex rel. J.J.T.*, 877 P.2d at 164. As a result, "the State may reinitiate proceedings to terminate parental rights at any time and present any newly discovered evidence in those proceedings." *Office of the Guardian ad litem v. A.M.K. (State ex rel. C.L.)*, 2007 UT 51, ¶ 18, 166 P.3d 608. While the court of appeals has not held that res judicata never applies to child welfare proceedings, it has raised questions about the propriety of its application, and neither the court of appeals nor this court has ever barred a successive petition to terminate parental rights on the basis of res judicata. *See State ex rel. J.J.T.*, 877 P.2d at 163–64. We accordingly adopt the rule, consistent with many other jurisdictions, that in child welfare proceedings res judicata does not bar courts from considering both newly discovered facts, whether or not they were knowable at the time of the earlier proceeding, and facts determined in previous termination proceedings when considering a later termination petition. *Id.* at 163 n. 2. Though the court is not bound by previous findings of fact if newly discovered evidence refutes them, in the absence of new evidence, the court should adhere to previous findings. *R.B. v. State (State ex rel. J.B.)*, 2002 UT App 268, ¶ 10, 53 P.3d 968.

*A. Newly Discovered Evidence and Events Occurring Subsequent to the Previous Termination of Rights Determination Prevent the Court from Applying Res Judicata to the Determination of Mr. Nuosci's Parental Fitness*

██ ¶ 19 The petition to terminate Mr. Nuosci's parental rights is not barred by res judicata because it does not present the same claim litigated during the 2005 contested adoption proceeding. "Where ... two causes of action rest on different facts, and evidence of a different kind or character is necessary to sustain them, the claims are not the same for purposes of res judicata." *State ex rel. J.J.T.*, 877 P.2d at 165. Intervening events may constitute new facts that form the basis of a subsequent petition to terminate parental rights. Though the district court determined that Mr. Nuosci was not unfit in the 2005 contested adoption proceeding, Mr. Nuosci has since pleaded guilty to several federal charges, spent nearly three years in jail, and been deported to Canada. Further, the juvenile court learned that Mr. Nuosci was convicted of fraud-related charges on three separate occasions in Canada during the nineties. Even if information regarding these convictions was discoverable at the time of the 2005 hearing—and it may not have been considering Mr. Nuosci's constant use of assumed names and the limited access the district court had to information regarding the federal case against him—the court was not barred from considering such evidence in this subsequent petition to terminate Mr. Nuosci's parental rights. In addition to Mr. Nuosci's criminal convictions and deportation, the juvenile court also considered his history of violent behavior and threats. Res judicata does not prevent the court from considering both events that occurred between the petitions and those discoverable, but not considered by the district court in the first petition.

*B. The Addition of the Guardian ad Litem as a Party Defeats the Application of Res Judicata*

██ ¶ 20 Furthermore, res judicata does not apply because the guardian ad litem was not a party to the 2005 failed adoption proceeding. In order to qualify for claim preclusion in juvenile proceedings, "both cases must involve the same parties." *State ex rel. S.D.C.*, 2001 UT App 353, ¶ 13, 36 P.3d 540. When an additional party, such as the state, joins a subsequent petition to terminate parental rights, claim preclusion cannot bar the petition. *B.J.H. v. State (State ex*

*rel. T.J.),* 945 P.2d 158, 162–63 (Utah Ct.App. 1997). The role of the guardian ad litem is to represent the interests of the child or children who are the subject of litigation, interests that were not represented in the prior termination proceeding. *Id.* at 163. In this case, only the Worthingtons, Ms. Sullivan, and Mr. Nuosci were parties to the original contested adoption proceeding. The guardian ad litem's office joined the 2007 petition to terminate Mr. Nuosci's parental rights in order to represent A.C.M.'s interests, which were not represented by independent counsel in the 2005 contested adoption proceeding. The addition of the guardian ad litem's office prevents the application of claim preclusion to bar the 2007 termination petition.

¶ 21 In summary, res judicata does not bar a subsequent termination petition from being brought against Mr. Nuosci. The instant termination petition is based on events occurring after the 2005 adoption proceeding and newly discovered evidence supporting termination of Mr. Nuosci's rights. Further, the addition of a new interested party, the guardian ad litem, further defeats Mr. Nuosci's res judicata claim.

## IV. THE JUVENILE COURT STATED LEGALLY SUFFICIENT GROUNDS TO TERMINATE MR. NUOSCI'S PARENTAL RIGHTS AND PROPERLY FOUND THAT SUCH TERMINATION WAS IN A.C.M.'S BEST INTERESTS

¶ 22 Mr. Nuosci argues that the facts found by the juvenile court do not provide a legally sufficient justification for termination of his rights. He also argues that the findings of fact do not support the juvenile court's conclusion that termination of his parental rights is in A.C.M.'s best interests.

¶ 23 In order to terminate parental rights, the juvenile court must make two separate findings. *S.L. v. State, (State ex rel. M.L.),* 965 P.2d 551, 561, n. 13 (Utah Ct.App.1998); *State ex rel. G.D. v. L.D.,* 894 P.2d 1278, 1284 (Utah Ct.App.1995). First, it must find grounds for termination under Utah Code section 78A–6–507. *State ex rel. M.L.,* 965 P.2d at 561 n. 13. We will uphold the juvenile court's determination as to the grounds for termination so long as there is a factual basis for any one of the grounds listed in section 78A–6–507(1). *See* Utah Code Ann. § 78A–6–507(1)(2008); *F.C. Jr. v. State (State ex rel. F.C. III)* 2003 UT App 397, ¶ 6, 81 P.3d 790; *T.B. v. Utah (State ex rel. D.B.),* 2002 UT App 314, ¶ 13 n. 4, 57 P.3d 1102. Second, the juvenile court must find that termination of the parent's rights is in the best interests of the child. *State ex rel. M.L.,* 965 P.2d at 561 n. 13.

¶ 24 The juvenile court justified its decision to terminate Mr. Nuosci's parental rights on four subsections of Utah Code section 78A–6–507: neglect, unfitness, unwillingness or inability to remedy unfitness, and unwillingness or inability to remedy the circumstances that caused the child to be in a court-supervised Out-of-home placement. Utah Code Ann. § 78A–6–507(1)(b)–(d),(f)(iv) (2008). The juvenile court then determined that termination was in A.C.M.'s best interests.

### A. The Juvenile Court Properly Found Mr. Nuosci to Be an Unfit Parent

¶ 25 The juvenile court could consider Mr. Nuosci's extensive criminal history and pervasive fraudulent behavior as grounds for termination. Utah Code section 78A–6–508(6)(b) provides that "conviction of a crime, if the facts surrounding the crime are of such a nature as to indicate the unfitness of the parent to provide adequate care to the extent necessary for the child's physical, mental, or emotional health and development" is "prima facie evidence of unfitness."

¶ 26 In 2005, Mr. Nuosci was convicted of numerous federal felonies, including mail fraud, identity theft, and bank fraud. Prior to his convictions in the United States, Mr. Nuosci was also convicted in Canada of fraud-related charges on at least four separate occasions and of one charge of uttering threats. In addition to these convictions, Mr. Nuosci repeatedly lied to the court, to government officials, and to those with whom he had personal relationships. Indeed, he lied to Ms. Sullivan in order to induce her to enter into the surrogacy contract with him.

The juvenile court properly found that the facts surrounding his repeated acts of dishonesty were sufficient to demonstrate Mr. Nuosci's unfitness to provide adequate care for A.C.M.'s mental and emotional health and development, particularly in light of Mr. Nuosci's deportation. Not only does his pervasive fraud constitute prima facie evidence of his unfitness, but the court could also consider it by itself as an additional ground for termination.

¶ 27 The juvenile court also properly relied upon Mr. Nuosci's history of violent behavior as a ground to terminate his rights. Utah Code section 78A–6–508(2)(f) allows the juvenile court to consider a parent's history of violent behavior as a factor supporting the termination of a parent's rights. The juvenile court specifically found that uncontroverted evidence showed that Mr. Nuosci was violent toward Ms. Sullivan and his former domestic partner, Lonnie James. Further, it noted that one of his Canadian convictions was for uttering threats. These findings also support termination of Mr. Nuosci's parental rights.

¶ 28 Because there are several proper grounds on which the juvenile court based its decision to terminate Mr. Nuosci's parental rights, we need not reach Mr. Nuosci's challenges to the juvenile court's other grounds for termination.

### B. The Juvenile Court Considered Mr. Nuosci's Present Ability to Function as a Parent

¶ 29 The juvenile court did not disregard Mr. Nuosci's present ability and willingness to function as a parent when it terminated his rights. "[T]he juvenile court must consider a parent's ability at the time of the termination hearing in determining whether termination is appropriate." *State ex rel. M.L.*, 965 P.2d at 561. However, the court must consider a parent's present ability "in light of the parent's past conduct and its debilitating effect on the parent-child relationship." *Id.* at 562. In considering Mr. Nuosci's present ability to parent, the juvenile court noted the discrepancy between the $5000 per month income he testified that he received and the fact that he had applied for

indigent status with the court just weeks prior to his testimony. Based on this conflicting testimony and Mr. Nuosci's past history of dishonesty, the juvenile court afforded no weight to Mr. Nuosci's testimony. The juvenile court properly considered Mr. Nuosci's present ability to parent and determined that it did not meet a minimum threshold of fitness.

### C. Termination of Mr. Nuosci's Parental Rights Was in A.C.M.'s Best Interests

¶ 30 The juvenile court correctly determined that termination of Mr. Nuosci's parental rights would be in A.C.M.'s best interests. A court may only consider evidence of the child's best interests after finding that the parent does not meet the minimum threshold of fitness. *State ex rel. G.D.*, 894 P.2d 1278, 1284 (Utah Ct.App.1995) ("[I]t is unconstitutional to terminate a parent's rights based upon a finding of the best interests of the child without first finding that the parent is below some minimum threshold of fitness."). To determine the best interests of the child, the court must consider "the physical, mental, or emotional condition and needs of the child." Utah Code Ann. § 78A–6–509(1)(a). The court is not limited to considering only the factors listed in the statute. *Id.* Though a parent's deportation alone may be insufficient to find that termination of that parent's rights is in the child's best interests, in cases like this, where the child has developed no previous relationship with the parent, the fact of a parent's deportation is a sufficient basis to find that termination of the parent's rights is in the child's best interests. Based on the testimony at the hearing, the juvenile court found that requiring A.C.M. to cross international borders to visit a father that he has not seen since he was two months old would be severely disruptive to A.C.M.'s mental health. We agree that this disruption would not be in A.C.M.'s best interests.

¶ 31 The juvenile court made sufficient findings to support its determination that Mr. Nuosci does not meet the minimum thresholds for fitness and that termination of his parental rights is in A.C.M.'s best interests.

## CONCLUSION

¶ 32 The order terminating Mr. Nuosci's parental rights was final and appealable. Because we find that the juvenile court had jurisdiction to hear the termination petition, was not barred by res judicata from considering the petition, and found sufficient facts to support its conclusion that Mr. Nuosci was an unfit parent and that terminating his parental rights would be in A.C.M.'s best interests, we affirm the juvenile court's termination order.

¶ 33 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice NEHRING concur in Justice PARRISH's opinion.