**2023 UT 11**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH, in the interest of C.D.S. and W.E.S.,
persons under eighteen years of age.

A.S.,
*Petitioner*,

*v.*

STATE OF UTAH,
*Respondent*.

No. 20220580
Heard February 10, 2023
Filed June 8, 2023

On Certiorari to the Utah Court of Appeals

Eighth District Juvenile, Uintah County
The Honorable Ryan B. Evershed
Nos. 1178352, 1184710

Utah Court of Appeals, Salt Lake
No. 20220100

Attorneys:

K. Andrew Fitzgerald, Moab, for petitioner,

Sean D. Reyes, Att'y Gen., Carol L. C. Verdoia, John M. Peterson,
Asst. Atty's Gen., Salt Lake City, for respondent

Martha Pierce, Salt Lake City, Guardian ad Litem for C.D.S.
and W.E.S.

ASSOCIATE CHIEF JUSTICE PEARCE authored the opinion of the Court,
in which CHIEF JUSTICE DURRANT, JUSTICE PETERSEN,
JUSTICE POHLMAN, and JUDGE CORNISH joined.

Having recused herself, JUSTICE HAGEN does not participate herein;
DISTRICT COURT JUDGE RITA M. CORNISH sat.

ASSOCIATE CHIEF JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1  The juvenile court terminated the parental rights of a mother and father. They each had fifteen days to appeal. Father appealed within that window. Mother filed her notice of appeal on the wrong side of the deadline. The court of appeals dismissed Mother's appeal as untimely.

¶2 Mother argues that the court of appeals erred for a couple of reasons. We reject Mother's argument that a minute entry that came after the court signed the final order restarted the clock on her time to appeal. But we agree with her that Utah Rule of Appellate Procedure 52(c)—together with Father's timely appeal—extended her time to file a notice of appeal. We reverse and remand to the court of appeals.

## BACKGROUND

¶3 In September 2019, the Division of Child and Family Services (DCFS) petitioned the juvenile court to remove two-year-old Chester from Mother and Father's custody. At the time, Mother was pregnant with their second child, Winnie.[1]

¶4 The juvenile court placed Chester in the temporary custody of his aunt and uncle. The court also ordered DCFS to provide Mother and Father with reunification services.

¶5  After Winnie was born, DCFS initially allowed Winnie to stay with Mother and Father. A few months after Winnie's birth, however, DCFS filed a "Motion for Expedited Placement and Temporary Custody" for Winnie. From the beginning of 2020 to the beginning of 2021, the juvenile court conducted several permanency and review hearings for the children. At the end of 2020, the court authorized Chester to live with Mother and Father in a trial home placement.

¶6  At a hearing a few months later, the juvenile court determined that, while Mother and Father had substantially complied with the reunification plan, reunification was not likely to be appropriate within the next ninety days. The court terminated DCFS's reunification services and changed the children's primary permanency goal from reunification to adoption.

---

[1] Chester and Winnie are pseudonyms.

¶7 In November 2021, the juvenile court held a trial. At the trial's conclusion, the court indicated that it would enter an order terminating Mother's and Father's parental rights.

¶8 The juvenile court entered the written termination order (Termination Order) on January 7, 2022, which terminated Mother's and Father's parental rights. In it, the court detailed the grounds it relied upon to terminate Mother's and Father's parental rights. The juvenile court found that DCFS made reasonable efforts to provide reunification services to Mother and Father, and found that it was in the best interest of the children for Mother's and Father's parental rights to be terminated and for the children to be adopted.

¶9 The Termination Order stated: "This is a final and appealable order. There will be no further order after this as related to the parent's [sic] parental rights." It also informed Mother and Father that they had "15 days from the signing of this order to file a Notice of Appeal with the Juvenile Court."[2]

¶10 On January 10, 2022, the juvenile court filed a minute entry titled "Minutes."[3] The Minutes contained a condensed recitation of what had occurred at trial. Among other particulars, it detailed who was present in the courtroom, the names of those who testified, and the exhibits the court entered into evidence. The Minutes also contained several findings of fact and ordered the termination of Mother's and Father's parental rights.

¶11 On January 24, 2022, Father filed his notice of appeal.[4] On January 25, Mother's trial counsel filed a notice of appeal.

¶12 The court of appeals determined that Mother's appeal was not filed within fifteen days of the Termination Order, as Utah Rule

_____

[2] The Utah Rules of Appellate Procedure provide the fifteen-day timeline in child welfare proceedings. Rule 52(a) states that in this setting, a notice of appeal "must be filed within 15 days of the entry of the order appealed from." UTAH R. APP. P. 52(a).

[3] As we march through our analysis, we will refer to this document as both the minute entry and the Minutes.

[4] The fifteenth day was Saturday, January 22, 2022. By operation of rule 22(a) of the Utah Rules of Appellate Procedure, which does not require parties to file on Saturdays and Sundays, the time for filing the petition was extended to the following Monday, January 24. *See* UTAH R. APP. P. 22(a).

of Appellate Procedure 52(a) requires. The panel dismissed the appeal for lack of jurisdiction. This court granted certiorari review.

¶13 Mother contends that her appeal was timely filed for at least one of two reasons. Mother first points to the Minutes that the court filed several days after it entered the written termination order. Mother argues that the minute entry constitutes a new appealable order and that she had fifteen days from the entry of that order to file her notice of appeal. The State and the guardian ad litem disagree.

¶14 Mother next asserts that the Utah Rules of Appellate Procedure allow her to file a notice of appeal within five days of Father's timely filed notice. Rule 52(c) states that after a party files a notice of appeal, "any other party" may file its notice of appeal within five days. Mother asserts that she is "any other party" within the rule's meaning. The State largely agrees with Mother's argument. The guardian ad litem does not.

## STANDARD OF REVIEW

¶15 "Whether jurisdiction is proper is a legal question that we review for correctness . . . ." *State ex rel. A.C.M.*, 2009 UT 30, ¶ 6, 221 P.3d 185. The court of appeals based its decision on an interpretation of the Utah Rules of Appellate Procedure. "The interpretation of a rule of procedure is a question of law that we review for correctness." *Arbogast Family Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 10, 238 P.3d 1035 (cleaned up).

## ANALYSIS

### I. THE MINUTE ENTRY DID NOT EXTEND MOTHER'S TIME TO APPEAL

¶16 The court of appeals held that it lacked jurisdiction over Mother's appeal because it was filed outside the fifteen-day timeframe that Utah Rule of Appellate Procedure 52(c) provides. Mother argues that the court of appeals erred when it calculated the fifteen-day period from the entry of the Termination Order and not the subsequently entered Minutes. Mother argues that she is entitled to appeal from the Minutes and that her notice of appeal of that ruling was timely filed.

¶17 The State and the guardian ad litem argue that the court of appeals correctly held that the minute entry was not a separately appealable order. The State claims that the Minutes were "a mere ministerial document from which the judgment must be drawn" and that the minute entry was not an appealable order because it "was a

belated entry that did not modify or change the substance of the Termination Order." The guardian ad litem similarly argues that the Termination Order "triggered the timing for the notice of appeal" and that the minute entry was an inconsequential "after-the-fact ministerial document[]."

¶18 The clock to file a notice of appeal starts when "the court directs that no additional order need be entered." *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 35, 201 P.3d 966. There can be no doubt that the Termination Order met this test. The Order stated: "There will be no further order after this as related to the parent's [sic] parental rights," and informed Mother and Father that they had fifteen days to appeal.[5]

¶19 This statement in the Termination Order alone, of course, does not answer the question this case presents. Mother asks what the effect is of a subsequently entered order on the same topic as a final appealable order. This is a question that we answered long ago. If one order starts to run the time for appeal, the entry of another order does not restart the clock if the later entry does not change the substance of the first.

¶20 For example, in *Adamson v. Brockbank*, we held that the defendants could file their appeal from an order amending an original judgment, even though the date to file a timely appeal from the original order had already passed. *Adamson v. Brockbank*, 185 P.2d 264, 268 (Utah 1947). The amended order corrected an inconsistency in the original judgment. *Id.* This correction clarified the liability of a defendant, an alteration we held was significant enough to change the character of the judgment. *Id.* We articulated the principle that, "where a belated entry merely constitutes an amendment or

---

[5] Mother questions whether our precedent on the finality of orders applies to child welfare proceedings. It generally does, though our rules and precedent make some distinction between child welfare and non-child welfare cases. For example, rule 58A of the Utah Rules of Civil Procedure requires that "[e]very judgment and amended judgment must be set out in a separate document." There is no such requirement in child welfare proceedings. *See* UTAH R. APP. P. 52(a); *State ex rel. A.C.M.*, 2009 UT 30, ¶ 10, 221 P.3d 185. But no rule or precedent alters the conclusion that a belated entry or modification that does not change the substance of a final order does not create a new final and appealable order.

modification not changing the substance or character of the judgment, such entry . . . relates back to the time the original judgment was entered." *Id.*

¶21 We relied on this holding in *State v. Garner*, 2005 UT 6, 106 P.3d 729. There, a modification to an original judgment clarified the nature of the defendant's conditional plea in greater detail. *Id.* ¶ 12. But this was "a redundant addition, not a material change" and thus did not extend the time for Garner's appeal. *Id.*¶¶ 11, 13.

¶22 Here, the Minutes did not amend or modify the substance of the Termination Order. The Minutes recited short findings of fact and repeated the conclusion that the parental rights be terminated. It did not change the parents' rights or the children's status. The minute entry did not amend or modify the Termination Order, so the time to appeal ran from the entry of the Termination Order. The court of appeals did not err when it rejected Mother's argument.

## II. RULE 52(C) EXTENDED MOTHER'S TIME TO APPEAL

¶23 Mother also argues that the court of appeals incorrectly concluded that Father's appeal, filed one day before Mother's, did not extend Mother's time to appeal. The court of appeals held that rule 52(c) of the Utah Rules of Appellate Procedure "relates to cross-appeals, i.e., appeals filed by someone who has already been made a party to the appeal." The court, therefore, held that Mother was "required to file her own timely appeal" because she "was not a party to Father's appeal."

¶24 Mother argues that rule 52(c) allows a party five days to file a notice of appeal from the date another party to the case files its notice of appeal.[6] The State agrees with Mother and contends the court of appeals incorrectly determined that "rule 52(c) did not render Mother's notice of appeal timely."[7] The State expresses

---

[6] Rule 52(c) of the Utah Rules of Appellate Procedure, titled "Time for cross-appeal," reads:

> If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 5 days after the first notice of appeal was filed, or within the time otherwise prescribed by paragraphs (a) and (b) of this rule, whichever period last expires.

[7] The State—both in its briefs and during oral argument—acknowledges that rule 52(c)'s plain language supports Mother's argument. We commend the State for its candor.

uncertainty on whether Mother has initiated her own appeal or must be limited to the issues presented in Father's appeal, but it still concludes that the "plain language of appellate rule 52(c) means that Mother has, at least, successfully initiated a cross-appeal."[8]

¶25  "When we interpret a procedural rule, we do so according to our general rules of statutory construction." *Arbogast Family Tr. v. River Crossings, LLC*, 2010 UT 40, ¶ 18, 238 P.3d 1035. In statutory construction, "our primary goal is to evince the true intent and purpose of the Legislature," the "best evidence" of which "is the plain language of the statute itself." *Zilleruelo v. Commodity Transporters, Inc.*, 2022 UT 1, ¶ 18, 506 P.3d 509 (cleaned up). Thus, "[w]e interpret court rules, like statutes and administrative rules, according to their plain language." *Arbogast Family Tr.*, 2010 UT 40, ¶ 18 (cleaned up). Although we do this with the added wrinkle that, when we interpret the Utah Rules of Procedure, the intent we most often attempt to discern through the text is ours, and not the Legislature's.

¶26  Rule 52(c) is straightforward: "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 5 days after the first notice of appeal was filed." UTAH R. APP. P. 52(c). Nothing in the language of the rule itself limits the phrase "any other party" the way the court of appeals did. That is, nothing in the plain text limits the rule's reach to a party who is already part of the appeal.

¶27  The court of appeals' reading of rule 52(c) appears to have been influenced by the rule's title. We put the label "Time for cross-appeal" on that subsection. However, we have noted that "[t]he title of a statute is not part of the text of a statute, and absent ambiguity, it is generally not used to determine a statute's intent." *Blaisdell v. Dentrix Dental Sys., Inc.*, 2012 UT 37, ¶ 10, 284 P.3d 616 (cleaned up). We are in what some would consider good company with that proposition. A prominent treatise on the topic counsels that a "title or heading should never be allowed to override the plain words of a text." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 222 (2012).[9]

---

[8] The guardian ad litem disagrees for reasons we will discuss and dismiss in a page or two.

[9] That is not to say that titles are irrelevant. When "we need help understanding an ambiguous provision, titles are persuasive and can

(continued . . .)

¶28 It nevertheless appears the court of appeals relied on this title and imported the language "party to this appeal" into the rule, such that it would read: "If a timely notice of appeal is filed by a party, any other party [who was made party to the appeal] may file a notice of appeal within 5 days after the first notice of appeal was filed." UTAH R. APP. P. 52(c).

¶29 As Mother points out, "[t]he rules do not define 'a party' as something different than those who were parties to the proceedings before the district or juvenile court." The court of appeals' dismissal incorrectly "would define 'a party' in the lower courts as different than 'a party' before the appellate courts on the same matter."

¶30 Our reading of the rule is buttressed by how we understand rule 52(c) came to be. It is based on rule 4 of the Utah Rules of Appellate Procedure, which is, in turn, based on rule 4(a)(3) of the Federal Rules of Appellate Procedure.[10] *See* UTAH RULES OF APPELLATE PROCEDURE: WITH NOTES OF THE SUPREME COURT ADVISORY COMMITTEE 14 (1984) (on file with the Utah State Law Library) (stating that rule 4(d) "adopts substantially the time period and concept of cross-appeal in Rule 4(a)(3)" of the Federal Rules of Appellate Procedure).

¶31 Rule 4(a)(3) of the Federal Rules of Appellate Procedure gives a party fourteen days after another party appeals to file its appeal.[11] Wright and Miller's treatise on federal procedure explains that rule 4(a)(3) allows any party to take advantage of the additional

---

aid in ascertaining the statute's correct interpretation and application." *Graham v. Albertson's LLC*, 2020 UT 15, ¶ 24, 462 P.3d 367 (cleaned up). We just don't use titles to create ambiguity. This is because titles are generally shorthand descriptions of what is to follow and can miss some of the complexities of the text to come.

[10] Utah Rule of Appellate Procedure 4 states, in relevant part: "If a timely notice of appeal is filed by a party, any other party may file a notice of appeal within 14 days after the date on which the first notice of appeal was filed." UTAH R. APP. P. 4(d). Unlike rule 52(c), it gives "any other party" fourteen days (instead of five) to file an appeal. In addition, rule 4(d) is titled "Additional or cross-appeal" rather than "Time for cross-appeal." *Compare* UTAH R. APP. P. 4(d), *with* UTAH R. APP. P. 52(c).

[11] The federal rule bears the title "Multiple Appeals." FED. R. APP. P. 4(a)(3).

time to file a notice of appeal. "The 14-day provision is not limited to cross-appeals, and plainly encompasses appeals by other parties such as co-parties or third-party defendants." 16A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION § 3950.7 (5th ed. 2022) (Westlaw).[12]

¶32 This interpretation reflects the views of the advisory committee. When the committee recommended a substantive amendment to this rule, it noted:

> The added time which may be made available by the operation of the provision is not restricted to cross appeals in the technical sense, i.e., to appeals by parties made appellees by the nature of the initial appeal. The exception permits any party to the action who is entitled to appeal within the time ordinarily prescribed to appeal within such added time as the sentence affords.

Advisory Committee Note to 1966 Amendments to Federal Rule of Civil Procedure 73(a), 39 F.R.D. 69, 131 (1966) (amending then rule 73(a) of the Federal Rules of Civil Procedure, a rule later incorporated into the appellate rules).

¶33 In other words, if Mother were in federal court, or in a non-child welfare case in a Utah court, her appeal would undoubtedly be timely filed under rules that in all aspects—other than title and time frame—mirror rule 52(c). The only part of rule 52(c) that suggests a different result is the title, and, as we have noted, we don't use titles that way.

---

[12] Other treatises echo this understanding. *See, e.g.*, JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE: CIVIL § 304.11 (2023) (LexisNexis) ("This provision is not restricted, however, to parties named as appellees in the initial appeal."); 18 BENDER'S FEDERAL PRACTICE FORMS, COMMENT ON APPELLATE RULE 4 (2022) (LexisNexis) ("This provision is not restricted to parties named as appellees in the initial appeal. Any party to the action is entitled to the benefit of the additional 14-day period."). This is also the way several federal cases have interpreted the rule. *See, e.g.*, *N. Am. Sav. Ass'n v. Metroplex Dev. P'ship*, 931 F.2d 1073, 1077–78 (5th Cir. 1991); *Melton v. Frank*, 891 F.2d 1054, 1056 n.1 (2d Cir. 1989); *Jackson Jordan, Inc. v. Plasser Am. Corp.*, 725 F.2d 1373, 1374–76 (Fed. Cir. 1984).

¶34 And here, there is additional reason to believe that we did not intend to use the rule's title to work a substantive limitation on the rule's text. In 2003, the Advisory Committee on the Utah Rules of Appellate Procedure heard from an assistant attorney general in the Child Welfare Division who "described child welfare proceedings and the need to expedite appeals from parental rights terminations" to "help stabilize" children's lives. *Approved Minutes*, SUPREME COURT'S ADVISORY COMMITTEE ON THE UTAH RULES OF APPELLATE PROCEDURE, ADMINISTRATIVE OFFICE OF THE COURTS (hereinafter *Approved Minutes*, SUPREME COURT'S ADVISORY COMMITTEE) (Nov. 19, 2003).

¶35 The need for speed was reiterated at a 2017 committee meeting, which discussed amendments to rule 52 and other child welfare appellate rules. The minutes of that meeting laid out that "[t]he purpose of these amendments is to expedite adoption and termination of parental rights appeals from the district courts and put them on the same footing as appeals from child welfare proceedings in the juvenile courts." *Approved Minutes*, SUPREME COURT'S ADVISORY COMMITTEE (Sept. 7, 2017).

¶36 The rules committee also discussed the relationship between rule 52 and rule 4 when a member "proposed, and the committee agreed, that Rule 52 should be amended to make it consistent with the recent changes that were approved to Rule 4(b)." *Approved Minutes*, SUPREME COURT'S ADVISORY COMMITTEE (May 5, 2016). Thus, it appears the drive behind these rules was not to have rule 52(c) exclude certain appeals that rule 4 includes but to maintain the structure of rule 4 while expediting child welfare proceedings.[13]

¶37 The guardian ad litem offers a different interpretation of the rule than Mother, the State, and the court of appeals. She avers that Mother was a party to her own termination proceedings but was never, even at the district court level, a party to Father's termination proceedings. The guardian ad litem thus contends that Mother was not "any party" in the context of the rule because she was not a party to the proceedings Father appealed.

¶38 The guardian ad litem supports this argument with something we said in *State ex rel. A.C.M.* There, we noted that we

---

[13] We encourage the Advisory Committee on the Utah Rules of Appellate Procedure to look at clarifying the title so it better reflects the rule's language and intent.

"treat the termination of each parent's rights separately for purposes of finality and appealability." *State ex rel. A.C.M.*, 2009 UT 30, ¶ 12, 221 P.3d 185. The guardian ad litem in *A.C.M.* claimed that the order terminating the father's parental rights was not a final order because the mother's rights had not yet been terminated. *Id.* We reasoned that the order terminating the father's rights was "final and appealable because it constitute[d] a change in the child's status" with respect to the father. *Id.* That also prompted the observation on which the guardian ad litem relies.

¶39 We stand by the observation that we can treat the termination of each parent's rights separately for the purposes of finality and appealability. But that is not to say that parents cannot be parties to the same case. And *A.C.M.* says nothing about the applicability of rule 52(c) when the system adjudicates both parents' rights in the same action and addresses them in the same order.

¶40 The guardian ad litem claims that there was one termination proceeding for Father and a separate one for Mother—and that the juvenile court consolidated these cases without making either parent party to the other's case. The record before us does not bear that out. A separate case was initiated relating to each child. Mother and Father were parties in both cases. The juvenile court consolidated Chester's case and Winnie's case, though each case maintained its own case number. The court did not—indeed, it could not—consolidate the parents' cases, because those cases did not exist. The court conducted a single trial in which both Mother and Father presented evidence and arguments. That trial resulted in a single order that lists both Mother and Father as parties.

¶41 On these facts, we have no trouble concluding that Mother was "another party" within the meaning of Utah Rule of Appellate Procedure 52(c) and is entitled to the additional five days to file a notice of appeal.[14]

---

[14] There is logic underlying rule 52(c). There may be occasions when a party's calculus on whether to file an appeal may be impacted by another party's decision to appeal. Using the facts of this case, for example—and we stress that this is a hypothetical and not a reflection of what we think actually occurred—it is entirely possible that a person in Mother's position might decide not to appeal the termination of her parental rights if she thinks it will only delay adoption of the children. Mother's thinking could dramatically change if her co-parent appeals and the possible outcomes include

(continued . . .)

### III. WE DECLINE TO ADDRESS MOTHER'S CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

¶42 Mother spends a considerable portion of her brief arguing that her appeal should be considered timely because her counsel was ineffective for filing past the fifteen-day deadline. Mother also argues she was prejudiced by her denial of the right to appeal.

¶43 Mother asked us to grant certiorari review on this issue. We did not. We note for future reference that an order that does not grant certiorari on an issue is a pretty good signal that we do not intend to address the question.[15]

### CONCLUSION

¶44 The court of appeals correctly ruled that the time for Mother to file her appeal ran from the entry of the Termination Order and not the subsequent Minutes. The court of appeals erred when it concluded that Utah Rule of Appellate Procedure 52(c) only applied to parties filing a cross-appeal. Mother timely filed her notice of appeal. We reverse and remand to the court of appeals to consider Mother's appeal.

———————————

not only adoption, but restoration of Father's parental rights and not hers. In that case, it makes sense that our rules would give Mother a few additional days to assess the changed landscape and decide whether to appeal.

[15] The guardian ad litem advocates that we task our rules committee with considering a new rule that would "reinstate the time for appeal in child welfare cases where a parent's right to effective counsel is implicated." We have previously recognized that a trial court *may extend* the time for appeal in a proceeding on termination of parental rights if a parent was denied effective assistance of counsel. *State ex rel. M.M.*, 2003 UT 54, ¶¶ 6, 9, 82 P.3d 1104. But this is not the same as a rule that says the court *shall reinstate* the time for appeal when a parent can show that they have been denied effective representation. We encourage the Advisory Committee on the Utah Rules of Appellate Procedure to explore such a rule, and we thank the guardian ad litem for the excellent suggestion.