2011 UT App 397

**STATE of Utah, in the interest of D.R.A., a person under eighteen years of age.**

**A.A., Appellant,**

v.

**State of Utah, Appellee.**

**No. 20100878–CA.**

Court of Appeals of Utah.

Nov. 25, 2011.

Colleen K. Coebergh, Salt Lake City, for Appellant.

Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian ad Litem.

Before Judges DAVIS, ORME, and VOROS.

## OPINION

VOROS, Judge:

¶ 1 Appellant A.A. (Mother) challenges the juvenile court's termination of her parental rights. Mother candidly concedes that she is an unfit parent, but nevertheless contends that, on the facts of this case, the State failed to establish, by clear and convincing evidence, that termination was in the best interest of her now thirteen-year-old daughter. We agree and reverse.

## BACKGROUND

¶ 2 On October 18, 2010, the juvenile court terminated Mother's parental rights in her then fifteen-year-old son, D.L.A. (Son), and then twelve-year-old daughter, D.R.A. (Daughter).[1] In March 2009, Mother was admitted to a psychiatric in-patient facility for short-term care, where she was diagnosed with paranoid schizophrenia. The children were taken into the custody of the Division of Child and Family Services (DCFS). Due to Mother's illness, the juvenile court later found that Son and Daughter were dependent children with regard to Mother.[2]

¶ 3 A clinical psychologist performed an evaluation of Mother and confirmed the diagnosis of paranoid schizophrenia, testifying at the termination hearing that she suffered from delusional thoughts and hallucinations and was not able to care for her children or provide a safe environment while she was delusional. Mother denied having any mental health problems and, aside from a few sessions with a therapist, failed to follow through substantially with any mental health treatment.

¶ 4 The children were placed in separate foster care homes, with an initial goal of reunification. Based on Mother's lack of progress, Daughter's permanency goal was changed in December 2009 to adoption or permanent guardianship with a relative, and she was placed on an adoption list. Daughter had mostly been in the same foster home after she had been taken into the custody of DCFS. However, Daughter's foster parents were not willing to adopt at the time, and DCFS had no plans to move Daughter to a foster home with greater potential for adoption. DCFS's attempt to place the children with their aunt was not successful. The DCFS caseworker spoke with one other family about adoption, but that family also declined. The caseworker testified, however, that families would express "some interest" "every once in a while." The caseworker acknowledged that finding a placement for a twelve-year-old is generally challenging. However, he testified that Daughter was "very adoptable" and that she was "close to the top of the list" in terms of behavior, academics, personality, and likeability.

¶ 5 According to Mother's uncontroverted testimony, Daughter does not wish to be adopted and opposes the termination of Mother's rights. Although Son wished to have nothing to do with Mother, Mother had weekly supervised visits with Daughter. Mother and the caseworker testified that Daughter was happy and affectionate during the visits with Mother and they appeared to have a good relationship. The caseworker testified that Mother generally acted appropriately during the visits. He reported a few recent problems with Daughter's attitude and behavior but acknowledged that these

---

1. The parental rights of Son's father had previously been terminated, and Daughter has no known legal father.

2. " 'Dependent child' includes a child who is homeless or without proper care through no fault of the child's parent, guardian, or custodian." Utah Code Ann. § 78A–6–105(11) (2008).

problems could be the result of Daughter's awareness of the pending termination proceedings. He also testified that he felt that Daughter held out a false hope of reunification and, despite her positive relationship with Mother, in his opinion Daughter would be benefitted by the permanency and closure that would come with termination of Mother's parental rights. Overall, however, Daughter appeared to be doing well in her foster home, in school, and in her relationship with Mother.

¶ 6 The juvenile court found that the State had established multiple grounds for termination by clear and convincing evidence: Mother was unfit as a parent due to her mental illness, had been unable or unwilling to remedy the situation, and had demonstrated a failure of parental adjustment. *See generally* Utah Code Ann. § 78A–6–507(1)(c)–(e) (2008). The court also found by clear and convincing evidence that termination of Mother's parental rights would be in Daughter's best interest. The court acknowledged that there were no immediate prospects for adoption, that Daughter loved her Mother and valued their relationship, and that Daughter was opposed to termination and adoption. The court also acknowledged that Daughter had "flourished" in her current placement, and that any recent deterioration in behavior coincided with the termination proceedings. Yet the court determined that termination was in Daughter's best interest on the following grounds: reunification was not a viable goal; the relationship could not move beyond supervised visits; Daughter was "adoptable" and needed a permanent home, and her relationship with Mother stood as an impediment to achieving permanency; and Daughter would not be open to adoption as long as Mother retained her parental rights. In sum, the court based its best-interest determination on its conclusion that termination would move Daughter toward the permanency goal of adoption.

## ISSUE AND STANDARD OF REVIEW

¶ 7 Mother contends on appeal that the evidence is insufficient to support the juvenile court's ruling that termination of Mother's parental rights is in Daughter's best interest. Mother does not challenge the juvenile court's determination that she is an unfit parent. Nor does she challenge the termination of her parental rights with regard to Son.

¶ 8 "Whether a parent's rights should be terminated presents a mixed question of law and fact." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. "Because of the factually intense nature of such an inquiry, the juvenile court's decision should be afforded a high degree of deference." *Id.* "Thus, in order to overturn the juvenile court's decision[,] '[t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id.* (quoting *In re Z.D.*, 2006 UT 54, ¶¶ 34, 40, 147 P.3d 401). While our review is "not abject," we nevertheless "must forebear disturbing the close call." *See In re Z.D.*, 2006 UT 54, ¶¶ 33–34, 147 P.3d 401 (citation and internal quotation marks omitted). "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. "It is also appropriate when evaluating whether a result was 'clearly erroneous' for the reviewing court to consider the standard of proof the prevailing party below was required to meet." *In re Z.D.*, 2006 UT 54, ¶ 40, 147 P.3d 401 (citation omitted).

## ANALYSIS

¶ 9 "In order to terminate parental rights, the juvenile court must make two separate findings. First, it must find grounds for termination under Utah Code section 78A–6–507.... Second, the juvenile court must find that termination of the parent's rights is in the best interests of the child." *In re A.C.M.*, 2009 UT 30, ¶ 23, 221 P.3d 185 (citations omitted); *see also* Utah Code Ann. §§ 78A–6–503(2), –506(3) (2008). Both findings must be supported by clear and convincing evidence. *See* Utah Code Ann. § 78A–6–506(3) ("The court shall in all cases require the petitioner to establish the facts by clear and convincing evidence...."); Utah R. Juv. P. 41(b); *In re J.D.*, 2011 UT

App 184, ¶ 11, 257 P.3d 1062, *cert. denied,* 263 P.3d 390 (Utah Sep. 28, 2011).

¶ 10 In determining whether termination of a parent's rights is in the best interest of a child, the juvenile court must, at a minimum, consider "the physical, mental, or emotional condition and needs of the child and his desires regarding the termination, if the court determines he is of sufficient capacity to express his desires," as well as "the effort the parent or parents have made to adjust their circumstances, conduct, or conditions to make it in the child's best interest to return him to his home after a reasonable length of time." Utah Code Ann. § 78A–6–509(1); *see also In re A.C.M.,* 2009 UT 30, ¶ 30, 221 P.3d 185. When considering parental efforts, the juvenile court must also consider, among other factors, the "maintenance of regular parent-time or other contact with the child that was designed and carried out in a plan to reunite the child with the parent or parents." Utah Code Ann. § 78A–6–509(1)(b)(ii).

¶ 11 The primary issue in this case is Mother's right to visitation with Daughter. Mother concedes that she is unfit to have custody of Daughter, and she acknowledges that reunification is no longer a viable goal. Yet she has an established, loving relationship with Daughter that she has maintained through weekly visits. Daughter has reciprocated that love and opposes adoption and termination of Mother's rights; moreover, Daughter is doing well in a setting that involves foster placement and weekly visits with Mother. Mother thus argues that because no adoptive home for Daughter is currently foreseeable, termination of her parental rights is at least premature, if not altogether inappropriate. In sum, Mother contends that the juvenile court erred in ruling that the evidence provided clear and convincing proof that termination of her rights was in the best interest of Daughter. We agree.

¶ 12 The juvenile court itself stated that it had "misgivings" about the best-interest determination. The court acknowledged that terminating Mother's rights was "extremely difficult" when there was no adoptive home in place. But the court terminated Mother's rights because it found, in essence, that termination would make achieving the goal of adoption more likely. Mother thus argues that the juvenile court's best-interest determination comes down to a matter of speculation that an adoptive home will become available and that termination will cause Daughter to change her feelings toward adoption.

¶ 13 The State argues that allowing Mother to retain her rights would require continued intervention by DCFS and the juvenile court as Daughter remains in a foster home and Mother continues supervised visits. The State argues that this result would place Daughter in a state of legal limbo, contrary to the statutory policy of permanency. *See In re J.P.,* 921 P.2d 1012, 1019 (Utah Ct.App. 1996) ("[T]he overriding policy concern [of Utah's child welfare laws] is to achieve permanency for these children, especially once a parent is determined unfit.").

¶ 14 The need for permanency is certainly of central importance. *See* Utah Code Ann. §§ 62A–4a–103(2)(b), –201(3) (Supp.2011); *In re J.P.,* 921 P.2d at 1019–20. But the statutory mandate to provide children with a permanent environment does not, by itself, establish that termination is in a particular child's best interest. Furthermore, "a permanency goal of adoption is not necessarily inconsistent with ongoing parental rights." *In re E.R.,* 2001 UT App 66, ¶ 14, 21 P.3d 680. Indeed, we have recognized that "a situation may arise where there are grounds for termination, and adoption would be the best goal for the children, but at the time of the termination hearing, termination may not be in the best interest of the children." *Id.* ¶ 12; *see also In re J.P.,* 921 P.2d at 1020 (Orme, P.J., dissenting) ("As an older child with an existing relationship with her mother and a desire to continue that relationship, the need for continuity and a measure of stability in her life may well be enhanced by . . . [r]emaining with a loving proctor mother who can better fulfill her daily needs, while continuing a relationship with her natural mother. . . .").

¶ 15 Here, Daughter's current adoption prospects are limited. Although the juvenile

court found Daughter to be "adoptable," no adoptive home for Daughter currently exists. Daughter was placed on an adoption list around December 2009, but by the time of the termination hearing in October 2010, the caseworker could report only one serious—but ultimately unsuccessful—adoption inquiry for Daughter. Moreover, Daughter's current foster parents are apparently unwilling to adopt her, and DCFS reported no plans to move Daughter to a home with greater potential for adoption. Although the unavailability of an adoptive home does not preclude termination, it is a relevant factor. *See In re J.D.,* 2011 UT App 184, ¶ 23, 257 P.3d 1062, *cert. denied,* 263 P.3d 390 (Utah Sep. 28, 2011). Furthermore, because no prospective adoptive home is presently available, continued intervention by the State—for an unknowable period of time—is inevitable whether or not Mother's rights are terminated.

¶ 16 Also, Daughter objects to termination and adoption. The juvenile court is required to consider the child's "desires regarding the termination, if the court determines he is of sufficient capacity to express his desires." Utah Code Ann. § 78A–6–509(1)(a) (2008). Because Daughter is over twelve years old, her consent would also be required for an adoption. *See id.* § 78B–6–120(1)(a). The juvenile court "inferre[d]" that Daughter would not be open to adoption as long as Mother retained her rights, but did not go so far as to infer that Daughter would be open to adoption if Mother's rights were terminated.

¶ 17 In addition, Daughter has been doing well in her current situation. She appears to be succeeding academically and socially, and her relationship with her foster family appears to be good. The juvenile court acknowledged that recent deterioration in Daughter's behavior and attitude coincided with the termination proceedings. In fact, until the termination petition was filed and the status quo was threatened, Daughter "flourished."

¶ 18 Finally, Mother and Daughter have an established, loving relationship. Weekly visits between Mother and Daughter are an integral part of the setting in which Daughter has flourished. The visits have been positive, with minimal problems, and Mother and Daughter each enjoy the time together. Although Mother's current condition renders her unable to care for and provide a safe environment for Daughter, her condition does not impair her visits with Daughter.

¶ 19 The remaining grounds for the court's decision—that reunification is not a viable goal and that the relationship between Mother and Daughter could not move beyond supervised visits—do not support a finding that termination is in Daughter's best interest at this time. Mother does not argue that reunification would be in Daughter's best interest; rather, she argues that the continuity and stability that flow from maintaining her visitation rights is in Daughter's best interest. We agree that termination is premature in this case. Daughter has an established, loving relationship with Mother, is generally doing well in her current placement, and objects to termination and adoption. And while adoption is impossible without the termination of Mother's parental rights, it is equally impossible without Daughter's consent. Moreover, no adoptive home is currently on the horizon.

¶ 20 Our case law makes clear that a parent possesses a fundamental—though not absolute—right "to maintain ties to his or her child." *Jensen v. Cunningham,* 2011 UT 17, ¶¶ 72–74, 250 P.3d 465 (citing *In re J.P,* 648 P.2d 1364, 1377 (Utah 1982) and *Wells v. Children's Aid Soc'y of Utah,* 681 P.2d 199, 206–07 (Utah 1984)). And our Legislature has safeguarded that relationship by permitting parental rights to be terminated only upon a showing by clear and convincing evidence. *See* Utah Code Ann. § 78A–6–506(3) (2008).

¶ 21 Here, the tie Mother seeks to maintain is limited—the right to continue weekly visits with her thirteen-year-old daughter. Mother does not seek custody, and in fact candidly concedes her unfitness. We recognize that only rarely will a child's best interests not be served by terminating the rights of an unfit parent. *See In re J.D.,* 2011 UT App 184, ¶¶ 33–36, 257 P.3d 1062 (Orme, J., concurring specially), *cert. denied,* 263 P.3d 390 (Utah Sep. 28, 2011). However, "Utah courts have declined to terminate parental rights, even after finding parental miscon-

duct, where it is not in the child's best interests." *In re B.M.S.*, 2003 UT App 51, ¶ 18, 65 P.3d 639 (citing *In re E.R.*, 2001 UT App 66, ¶¶ 12–13, 21 P.3d 680 and *In re R.A.J.*, 1999 UT App 329, ¶¶ 14–15, 991 P.2d 1118). This is such a case. Limited as this mother-daughter relationship is, the benefits of allowing it to continue are too palpable, and the benefits of severing it too speculative, for us to agree that the State has shown by clear and convincing evidence that termination is in the best interest of this child. We stress that future circumstances, such as the emergence of an adoptive home, may alter this equation. If so, DCFS is free to re-petition the juvenile court for termination of Mother's parental rights. *See In re C.L.*, 2007 UT 51, ¶ 18, 166 P.3d 608. But in the meantime, our review of the record leaves us with a firm and definite conviction that the evidence does not clearly and convincingly establish that terminating Mother's parental rights is in Daughter's best interest.

## CONCLUSION

¶ 22 The juvenile court erred in finding on the existing record that the evidence was clear and convincing that termination of Mother's parental rights is in Daughter's best interest. We therefore reverse.

¶ 23 WE CONCUR: JAMES Z. DAVIS, Presiding Judge, and GREGORY K. ORME, Judge.