IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, in the interest of J.T., a person under eighteen years of age. | ) ) ) ) | PER CURIAM DECISION |
| _____ | ) | Case No. 20120495-CA |
| | ) | |
| J.S.T., | ) | |
| | ) | F I L E D |
| Appellant, | ) | (September 13, 2012) |
| | ) | |
| v. | ) | 2012 UT App 253 |
| | ) | |
| State of Utah, | ) | |
| | ) | |
| Appellee. | ) | |

-----

Fourth District Juvenile, Provo Department, 1039572
The Honorable Kay A. Lindsay

Attorneys:     Janell R. Bryan, Heber City, for Appellant
               Mark L. Shurtleff and John M. Peterson, Salt Lake City, for Appellee
               Martha Pierce, Salt Lake City, Guardian ad Litem

-----

Before Judges Orme, Davis, and Christiansen.

¶1     J.S.T. (Father) appeals the termination of his parental rights. Father does not challenge the sufficiency of the evidence to support any specific finding of fact, but he challenges the conclusion that the best interests of J.T. would be served by the termination of his parental rights. Father also contends that the juvenile court erred because he claims the grounds for termination were based only upon his failure to comply with a service plan. We affirm.

¶2 Father claims that because J.T. had resided in a prospective adoptive home for approximately one month at the time of the termination trial, the juvenile court's best interests determination was erroneous. However, although the absence of an adoptive placement is not controlling, it may be considered in determining the best interests of the child in a termination proceeding. *See In re J.F.D.*, 2011 UT App 184, ¶ 24, 257 P.3d 1062; *see also In re D.R.A.*, 2011 UT App 397, ¶ 10, 266 P.3d 844 ("Although the unavailability of an adoptive home does not preclude termination, it is a relevant factor."). In *D.R.A.*, we concluded that termination was premature because the mother and child had an established, loving relationship; the child opposed adoption; and no adoptive home had been identified. *See id*. ¶ 19. However, we "stress[ed] that future circumstances, such as the emergence of an adoptive home, may alter this equation." *Id*. ¶ 21. Unlike in *D.R.A.*, the juvenile court found that there was no evidence of any relationship or bond between Father and two-year-old J.T. and no evidence that Father had the present capacity to parent J.T. The juvenile court also found that J.T. had benefitted from the safety and security provided by the foster family and had bonded with the foster parents, especially the foster father. Finally, the court found that "[t]here is no comparison between the father's lack of ability to care for his child adequately, and the love, security, stability, and care the child is, has, and will be receiving from the foster family." Accordingly, the court found that it was in J.T.'s best interest that Father's parental rights "be terminated so that his child can be adopted and receive stability, love, security and permanency." The best interests determination is supported by sufficient evidence.

¶3 Father's assertion that the juvenile court erred by basing the grounds for termination solely upon Father's failure to comply with his service plan lacks merit. Grounds for termination may not be solely based upon failure to satisfactorily complete a service plan. *See* Utah Code Ann. § 78A-6-507(2) (Supp. 2012). However, a failure to substantially comply with a service plan is evidence of a failure of parental adjustment. *See id*. § 78A-6-508(5). Father does not demonstrate that he presented any claim that these two statutes were in conflict to the juvenile court and therefore has not demonstrated that this issue was preserved for review on appeal. In addition, the juvenile court found not only that Father failed to comply with the service plan, but also that he did nothing to "substantially correct the circumstances, conduct, or conditions that led to the placement of" J.T. in Division of Child and Family Services' (DCFS) custody, despite reasonable efforts by DCFS to return J.T. to her parents' custody. *See id*. § 78A-6-502(2) (2008) (defining a failure of parental adjustment). The family had a lengthy history with DCFS. Father was ordered to vacate the family home in April 2011 due to concerns about domestic violence. Father did not complete or make substantial progress on domestic violence treatment or on the treatment recommended to address his mental health issues. He provided no information to the court or DCFS to

demonstrate his financial ability to support J.T. Father had not obtained safe, secure housing at the time of the termination trial. Significantly, Father did not keep in contact with DCFS or his appointed counsel. He did not participate in the termination trial or the permanency hearing. He did not financially support J.T. while she was in DCFS custody. The claim that the juvenile court's determination of grounds for termination was based solely upon Father's failure to comply with a service plan lacks merit under the circumstances of this case, especially where there was no evidence demonstrating that Father had the ability to parent J.T. at the time of the termination trial.

¶4 Father's related claim that he was denied the full period of the final service plan presumes that he was entitled to a particular period of reunification services. The extension of reunification services does not entitle a parent to services for any particular period. *See* Utah Code Ann. § 78A-6-312(14)(a) (Supp. 2012) ("If reunification services are ordered, the court may terminate those services at any time."); *see also id*. § 78A-6-312(2)(a) (stating that a parent's interest in receiving reunification services is limited). Father's argument incorrectly presumes that only the period after the October 2011 adjudication is relevant, although services were available to Father from at least the date of adjudication of the first petition in August 2010.

¶5 "Because of the factually intense nature of such an inquiry, the juvenile court's decision should be afforded a high degree of deference." *In re B.R.*, 2007 UT 82, ¶ 12, 171 P.3d 435. "Thus, in order to overturn the juvenile court's decision[,] '[t]he result must be against the clear weight of the evidence or leave the appellate court with a firm and definite conviction that a mistake has been made.'" *Id*. (quoting *In re Z.D.*, 2006 UT 54, ¶¶ 34, 40, 147 P.3d 401). "When a foundation for the court's decision exists in the evidence, an appellate court may not engage in a reweighing of the evidence." *Id*. ¶ 12. Accordingly, we affirm the decision to terminate Father's parental rights.


_____
Gregory K. Orme, Judge


_____
James Z. Davis, Judge


_____
Michele M. Christiansen, Judge