2013 UT App 288

STATE of Utah, in the interest of J.F.,
A.F., and A.F., persons under
eighteen years of age.

S.K., Appellant,

v.

State of Utah, Appellee.

No. 20130242–CA.

Court of Appeals of Utah.

Dec. 5, 2013.

Colleen K. Coebergh, for Appellant.

John E. Swallow and John M. Peterson, Salt Lake City, for Appellee.

Martha Pierce, Salt Lake City, Guardian ad Litem.

Judge JAMES Z. DAVIS authored this Memorandum Decision, in which Judge CAROLYN B. McHUGH and Senior Judge PAMELA T. GREENWOOD concurred.[1]

### Memorandum Decision

DAVIS, Judge:

¶1 S.K. (Mother) appeals the juvenile court's termination of her parental rights to J.F., A.F., and A.F. (the Children). We affirm.

¶2 Mother raises two issues on appeal. First, she argues that the juvenile court's

determination that termination of her parental rights was in the Children's best interests was not supported by sufficient evidence.[2] Second, Mother contends that the juvenile court's denial of her motion for new counsel constituted prejudicial error. We address each argument in turn.

### I. Best Interests Determination

¶3 Mother argues that the juvenile court "implicit[ly]" and exclusively relied on its finding of grounds for termination to support its best interests determination and failed to consider "unrefuted evidence of the loving and beneficial developed relationship between [her] and the [Children]."[3] We review Mother's challenge to the juvenile court's best interests determination for an abuse of discretion. *See In re Adoption of T.H.,* 2007 UT App 341, ¶9, 171 P.3d 480.

¶4 Mother is correct that her parental rights cannot be terminated solely upon the juvenile court's finding of grounds for termination and that a finding of grounds does not necessarily diminish the import of "a positive and strong parent-child bond." *Cf. In re D.R.A.,* 2011 UT App 397, ¶¶18, 21, 266 P.3d 844 (holding that though the mother admitted that there were grounds to support termination of her parental rights, "the benefits of allowing" the mother's relationship with her teenage daughter "to continue [were] too palpable, and the benefits of severing it too speculative for us to agree that the State [had] shown by clear and convincing evidence that termination [was] in the best interest of [the] child"). However, we conclude that, on its own, this loving relationship does not mean termination is not in the

1. The Honorable Pamela T. Greenwood, Senior Judge, sat by special assignment as authorized by law. *See generally* Utah Code Jud. Admin. R. 11–201(6).

2. Mother explicitly declines to challenge the grounds for termination identified by the juvenile court. *See* Utah Code Ann. § 78A–6–507 (LexisNexis 2012); *In re D.R.A.,* 2011 UT App 397, ¶9, 266 P.3d 844 ("In order to terminate parental rights, the juvenile court must make two separate findings. First, it must find grounds for termination under Utah Code section 78A–6–507.... Second, the juvenile court must find that termination of the parent's rights is in the best inter-

ests of the child." (omission in original) (citation and internal quotation marks omitted)).

3. Mother makes specific reference to "unrefuted" "clear and convincing" evidence that she "maintained contact with the [Children] by way of visitation"; she "appropriately and promptly attended to the [C]hildren's needs"; the Children "looked to [her] for help, support, and nurturing"; the Children "were overheard to express their love for [her]"; and her relationship with her youngest child fulfilled what "the [Division of Child and Family Services] worker would hope to see between a baby and caretaker."

best interests of the Children. We disagree that the juvenile court failed to consider or place sufficient weight on the evidence of the loving relationship shared by Mother and the Children or any other factors it had not already considered in its findings of grounds for termination.

¶ 5 Where, as here, the children are not in the parent's physical custody, the juvenile court must consider, at a minimum, the following factors in reaching its best interests determination:

(a) the physical, mental, or emotional condition and needs of the child and his desires regarding the termination, if the court determines he is of sufficient capacity to express his desires; and

(b) the effort the parent or parents have made to adjust their circumstances, conduct, or conditions to make it in the child's best interest to return him to his home after a reasonable length of time, including but not limited to:

(i) payment of a reasonable portion of substitute physical care and maintenance, if financially able;

(ii) maintenance of regular parent-time or other contact with the child that was designed and carried out in a plan to reunite the child with the parent or parents; and

(iii) maintenance of regular contact and communication with the custodian of the child.

Utah Code Ann. § 78A–6–509(1) (LexisNexis 2012).

¶ 6 In consideration of this test, the juvenile court noted that since the court became involved in the case in April 2008, the Children have been exposed to multiple incidents of domestic violence between Mother and the Children's father (Father). At least one of the Children has been in therapy, and her therapist expressed great concern about the child's ongoing exposure to verbal or physical fighting between Mother and Father.

¶ 7 The juvenile court indicated that the initial "problems of domestic violence" and later-discovered problems of substance abuse "have continued" through the years and re-

sulted in multiple neglect findings despite the Division of Child and Family Services's (DCFS) reunification efforts and the juvenile court's repeated orders for services, domestic violence counseling, and drug and alcohol treatment. Mother repeatedly failed to respond to services; did not complete counseling; skipped at least three drug tests; and regularly violated the court's no-contact order as to Father, exposing the Children to additional incidents of domestic violence.

¶ 8 On the other hand, the juvenile court described Mother's relationship with the Children as affectionate, tender, and responsive, stating that it "does not go unnoticed" that "there is a connection between these kids and their mom." However, the juvenile court also described the Children's placement with their paternal grandparents as a safe, loving, and structured environment where "their needs are being met." The court found that the grandparents are willing to adopt the Children, are willing to consider allowing Mother and Father contact with the Children based on "the mantra of what's best for the kids," and would not give their son, Father, special treatment. *See generally In re D.R.A.*, 2011 UT App 397, ¶¶ 11, 15, 21, 266 P.3d 844 (considering both the mother's loving relationship with her daughter and the daughter's limited adoption prospects before concluding that termination of the mother's parental rights was not in the best interests of her daughter).

¶ 9 The juvenile court concluded that "[r]eturning the [C]hildren [to Mother] would create a substantial risk of detriment to the [C]hildren's physical and emotional well-being" based on Mother's repeated violations of its no-contact order as to Father as well as "her failure to respond to services, her failure to complete domestic violence counseling and drug and alcohol counseling, and her repeated failure to provide her children with what they needed." The court noted that it did not make its ruling "lightly" but that years of efforts to break Mother's patterns of destructive behavior had not worked, ultimately making termination "in the long-term best interest of [the Children]."

¶ 10 Accordingly, "[w]hile the juvenile court did not expressly refer to the statute

when considering [the best interests] factors, the court's findings are replete with detailed discussion of the offered services, the [C]hildren's conditions and needs, and [Mother's] efforts." *See In re S.T.*, 928 P.2d 393, 400 (Utah Ct.App.1996). That there is some overlap between the juvenile court's findings supporting grounds for termination and its findings supporting the best interests analysis is of little import. *See id.* at 399–400 (explaining that the bifurcated analysis involved in parental termination cases "does not require courts to separately hear and consider evidence pertaining to unfitness and best interests" nor does it require "two different sets of findings and conclusions").[4] Accordingly, the juvenile court did not abuse its discretion when it determined that termination of Mother's parental rights was in the best interests of the Children.

## II. Denial of Mother's Motion for Substitute Counsel

¶ 11 Mother next argues that the juvenile court erroneously denied her day-of-trial motion for substitute counsel because the "total" breakdown in communication between her and her appointed counsel (Counsel) amounted to a deprivation of her statutory right to effective counsel, *see* Utah Code Ann. § 78A–6–1111(1)(a) (LexisNexis 2012); *In re C.C.*, 2002 UT App 149, ¶ 9, 48 P.3d 244 (recognizing that the statutory right to counsel in parental termination cases requires that the appointed counsel provide effective assistance). Mother does not dispute that the juvenile court made the required inquiry into her motion for substitute counsel, *see In re C.C.*, 2002 UT App 149, ¶ 12, 48 P.3d 244, but

argues that her motion was erroneously denied. We review the juvenile court's denial of Mother's request for new counsel for an abuse of discretion. *See id.* ¶¶ 6, 10.

¶ 12 The juvenile court has the discretion to appoint substitute counsel if the court's inquiry into the party's request reveals good cause for the substitution. *See id.* ¶¶ 12, 14. "[T]o warrant substitution of counsel, a defendant must show good cause, such as a conflict of interest, a complete breakdown in communication or an irreconcilable conflict which leads to an apparently unjust verdict." *State v. Lovell*, 1999 UT 40, ¶ 31, 984 P.2d 382 (citation and internal quotation marks omitted).[5] "[T]he cause of the breakdown—or who is to 'blame'—in an attorney-client relationship significantly affects whether the breakdown ... requires the court to substitute a defendant's court-appointed counsel." *State v. Scales*, 946 P.2d 377, 382 (Utah Ct.App.1997) (applying a constitutional standard). Accordingly, "[a] defendant must do more than show that he or she does not have a 'meaningful relationship' with his or her attorney," and "[t]he fact that a defendant does not get along with his [or her] attorney does not, standing alone, establish a denial of the effective assistance of counsel." *Id.* (second and third alterations in original) (citations and internal quotation marks omitted). Likewise, a defendant cannot rely "solely on [her] illegitimate complaints or subjective perception of events" to establish that her attorney-client relationship is "imperiled" by "intense animosity." *Id.* (citation and internal quotation marks omitted).

---

4. In this case, overlap in the findings was inevitable given the grounds for termination identified by the juvenile court. *Compare* Utah Code Ann. § 78A–6–507(1)(d) (indicating that grounds for termination exist where the juvenile court finds that "the child is being cared for in an out-of-home placement under the supervision of the court or the division; ... the parent has substantially neglected, wilfully refused, or has been unable or unwilling to remedy the circumstances that cause the child to be in an out-of-home placement; and ... there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care in the near future"), *with id.* § 78A–6–509(1)(b) (explaining that in its best interests analysis, a juvenile court must consider "the effort the parent or

parents have made to adjust their circumstances, conduct, or conditions to make it in the child's best interest to return him to his home after a reasonable length of time").

5. Although the right to effective assistance of counsel in parental termination cases is grounded in statute, unlike the Constitutional guarantee of a criminal defendant's right to effective counsel, our jurisprudence relies on criminal law for guidance on the question of substitution of counsel in juvenile proceedings. *See, e.g., In re C.C.*, 2002 UT App 149, ¶¶ 12–14, 48 P.3d 244 (reviewing a parent's request for new counsel under standards borrowed from criminal case law).

¶ 13 We agree with the juvenile court that Mother's decision not to cooperate with Counsel after having cooperated with her for several years, combined with Mother's vague assertion that Counsel had not been doing "enough" and may have been rude at times, do not establish good cause for substitution of counsel. *See State v. Pando*, 2005 UT App 384, ¶¶ 27–30, 122 P.3d 672 (concluding that the defendant's bare assertion that he and his trial counsel "disagreed about defense strategy" did not provide "good cause" to grant his request for substitute counsel). Mother admitted to having affirmatively avoided Counsel's communications by failing to respond to Counsel's various letters requesting that they schedule a meeting. The juvenile court acknowledged that Mother's decision to avoid communicating and cooperating with Counsel was illustrative of "friction" in their attorney-client relationship but determined that Mother's *choice* to avoid Counsel did not "establish[ ] that a complete breakdown of communication existed." *See In re S.W.*, 2007 UT App 50, para. 3, 2007 WL 474369 (mem.) (per curiam) (affirming the juvenile court's denial of a father's motion for substitute counsel and rejecting the father's argument that there was a complete breakdown in communication between him and his appointed counsel because any such breakdown was "a result of his own voluntary decision"); *see also Gardner v. Holden*, 888 P.2d 608, 621–22 (Utah 1994) (concluding that an "acrimonious relationship" between the defendant and his appointed counsel was insufficient to substantiate the defendant's claims of ineffective assistance of counsel absent any evidence that the acrimony affected counsel's performance); *Scales*, 946 P.2d at 383 (holding that the defendant "had no legitimate basis" to justify his "refusal to cooperate with" his appointed attorney and therefore did not demonstrate "good cause" for the court to appoint substitute counsel). Despite Mother's avoidance of Counsel, she and Counsel had met once before trial and again the morning of trial. Counsel asserted that she was prepared and ready to represent Mother at trial. *Cf. State v. Wulffenstein*, 733 P.2d 120, 121 (Utah 1986) (considering the criminal defendant's trial counsel's "willingness and ability" to represent the defendant at trial as a relevant factor in upholding the trial court's rejection of the defendant's request for new counsel). Accordingly, the juvenile court did not abuse its discretion in denying Mother's motion to appoint substitute counsel.

¶ 14 The juvenile court considered the appropriate factors and made sufficient findings to support its determination that termination of Mother's parental rights is in the best interests of the Children and therefore did not abuse its discretion in reaching its decision. The juvenile court also did not abuse its discretion in rejecting Mother's motion to appoint substitute counsel given Mother's failure to demonstrate that her request was for good cause. Affirmed.