**2019 UT App 204**

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF H.F.,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

J.F.,
Appellant,
*v.*
E.F.,
Appellee.

Opinion
No. 20180348-CA
Filed December 12, 2019

Third District Juvenile Court, Salt Lake Department
The Honorable Julie V. Lund
No. 1100472

Scott L. Wiggins and Lisa Lokken, Attorneys
for Appellant

Joshua P. Eldredge, Attorney for Appellee

Martha Pierce, Guardian ad Litem

JUDGE MICHELE M. CHRISTIANSEN FORSTER authored this Opinion,
in which JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

CHRISTIANSEN FORSTER, Judge:

¶1     J.F. (Mother) appeals from the juvenile court's termination of her parental rights to H.F. (Child). We reverse and remand for further proceedings.

BACKGROUND

¶2     Child was born in December 2012. Soon after Child's birth, Mother discovered that her husband, E.F. (Father), had

been using drugs. Suffering from postpartum depression, Mother also began using drugs with Father as a means of self-medicating.

¶3     In March 2014, the Division of Child and Family Services (DCFS) removed Child from Mother and Father's home as a result of their drug use. Upon removal, DCFS placed Child with Mother's parents (Grandparents). During this time, Grandparents facilitated visitation between Child and Father, as well as Father's extended family.

¶4     Soon after Child was removed from the parents' home, Mother began a relationship with "a really bad guy." She left Utah with him, and they began committing crimes together. Eventually, the pair were arrested, convicted of multiple crimes, and incarcerated.

¶5     Conversely, Father began participating in drug treatment in June 2014. After completing treatment, he became involved in various peer support groups to help others with drug addiction and even obtained a full-time job as a peer recovery coach for a nonprofit addiction-recovery agency. In March 2015, Father filed for divorce from Mother and was granted a default divorce awarding him full legal and physical custody of Child. In May 2015, upon the State's motion, the juvenile court terminated its jurisdiction and DCFS involvement. After Father regained custody of Child, Grandparents continued to provide regular daycare for Child.

¶6     In July 2016, Father moved the juvenile court to terminate Mother's parental rights. Father was engaged to be married, and his fiancée (Fiancée) wanted to adopt Child, but they had not yet set a wedding date and were not yet living together.[1]

---

1. Utah law requires a prospective adoptive stepparent to be married to the child's custodial parent and to have lived with the custodial parent and the stepchild for at least one year prior to

(continued…)

Grandparents "had a heated conversation with" Father about his termination petition, and subsequently, he put Child in full-time daycare and did not permit Grandparents to see Child as often.

¶7     At Mother's termination trial in December 2017, her former criminal attorney expressed his belief that Mother's criminal actions had been "very much influenced by" her co-defendant but that she "was a model defendant"; continually showed concern for her family and a desire to take care of her children;[2] had come to understand, through participation in counseling, her responsibilities and the detrimental effects of her co-dependent relationship with her co-defendant; and ultimately told the truth about the criminal incidents even though her co-defendant was damaged by her admissions. Mother was still incarcerated at the time of the termination trial but was due to be released in April 2019. She had been participating in a voluntary drug-treatment program. She testified that prior to Child's removal, she was his "sole care provider." She testified that she has a bond with Child, that she has had regular telephone and video calls with him since losing custody and sends him letters, that Child had expressed his desire to be reunited with Mother, and that she wants to have "visitation as much as possible" and to "be in [Child's] life as much as [she] can." She testified that she regrets her past decisions and their effect on her children, but she also could not rule out the possibility of a relationship with her co-defendant when he is released from prison in eight or nine years.

---

(…continued)

entry of the final decree of adoption. Utah Code Ann. § 78B-6-117(2)(a) (LexisNexis Supp. 2019); *id.* § 78B-6-136.5(2)(a) (2018). Thus, as of the termination trial, Fiancée was at least one year away from being able to adopt Child.

2. Mother has another child who was not included in the termination proceedings.

¶8    Father testified that he was willing to support a continuing relationship between Child and Mother following termination of her rights so long as it was "safe" for Child. Although Father did not discourage Child's contact with Mother, he did not directly facilitate Mother and Child's contact; rather, this contact took place when Child visited Grandparents. Both Father and Fiancée testified that Child has a very good relationship with Fiancée, that she treats him like her own child, and that Child sees her as his mom. Father testified that he believed Child's relationship with Mother's family was "beneficial." He claimed that Child's relationship with Mother's family would not change if Mother's rights were terminated. He admitted that he "could make a better effort in . . . communicating to set" up time between Child and Mother's extended family but explained that he had felt a need to set "boundaries" because the termination petition had "put a strain" on his relationship with Mother's family.

¶9    Grandparents expressed fear that termination would "have a very negative impact on [their] relationship with [Child]" and that Father "would move on" and "find a way to take [Child] away from" Grandparents. Mother's brother, who also had a close relationship with Father, expressed his belief that Father had become uninterested in Mother's side of the family and that Father would not let Mother's family see Child anymore if Mother's rights were terminated. Another of Mother's brothers likewise testified that the family's contact with Child had been less frequent during the preceding year and that he believed Father would cut off contact between Child and Mother's family if the court terminated Mother's rights.

¶10   Following trial, the juvenile court found two grounds for termination: (1) that Mother was an unfit parent because she was unable to care for Child as a result of her incarceration and (2) that she had neglected child through her habitual and excessive use of controlled substances. *See* Utah Code Ann. § 78A-6-507(1)(b), (c) (LexisNexis 2018); *id.* § 78A-6-508(2)(c), (e) (Supp.

2019). The court further found that termination was in Child's best interest.

¶11   In reaching its conclusion regarding Child's best interest, the juvenile court limited its analysis to three factors—Child's "bond with his caregivers," his "need for permanence and stability," and "the potential risk of harm if returned to [Mother's] care." The court found that there was not an intact parental relationship between Mother and Child because she had not acted as his caregiver for an extended period of time. It observed that although Child recognizes that Mother is his mom, he has developed a mother–child bond with Fiancée as well. The court also found that Fiancée intended "to adopt [Child] should he be legally free." The court concluded that "[t]hese facts support the need for permanence and stability and that [Child] does have a bond with his caregivers." The court further found that there was "a potential risk of harm to" Child from Mother because she could not rule out the possibility of a future relationship with her co-defendant, who had been described as a "really bad guy." Finally, the court found that termination of Mother's rights was "strictly necessary for [Child] to achieve permanency and stability." Based on these findings, the court determined that it was in Child's best interest that Mother's parental rights be terminated. Mother now appeals.

ISSUE AND STANDARD OF REVIEW

¶12   Mother argues that the juvenile court exceeded its discretion in terminating her parental rights. "The ultimate decision about whether to terminate a parent's rights presents a mixed question of law and fact." *In re B.T.B.*, 2018 UT App 157, ¶ 8, 436 P.3d 206 (quotation simplified), *cert. granted*, 440 P.3d 692 (Utah 2019). We review the court's factual findings for clear error and its legal conclusions for correctness, "affording the court some discretion in applying the law to the facts." *Id.* (quotation simplified). Nevertheless, "the proper interpretation and application of a statute is a question of law which we review

for correctness." *In re A.M.*, 2009 UT App 118, ¶ 6, 208 P.3d 1058 (quotation simplified).

ANALYSIS

¶13     In assessing whether termination of parental rights is appropriate, a court must employ a "two-part test." *In re B.T.B.*, 2018 UT App 157, ¶ 13, 436 P.3d 206, *cert. granted*, 440 P.3d 692 (Utah 2019). "First, a trial court must find that one or more of the statutory grounds for termination are present," and second, "a trial court must find that termination of the parent's rights is in the best interests of the child." *Id.* (quotation simplified). Mother does not contest the juvenile court's determination that grounds existed to support termination, but she maintains that termination was not in Child's best interest and that the court did not adequately consider all factors relevant to that determination.

¶14     "The 'best interest' test is broad, and is intended as a holistic examination of all the relevant circumstances that might affect a child's situation." *Id.* ¶ 47; *see also In re G.J.C*, 2016 UT App 147, ¶ 24, 379 P.3d 58 ("Determining a child's best interest in termination of parental rights proceedings is a subjective assessment based on the totality of the circumstances."). Utah courts have identified numerous factors that may be relevant to this determination. For example, a court may consider "the physical, mental, or emotional condition and needs of the child"; "the effort the parent has made to adjust their circumstances, conduct, or conditions to make restoring the parent–child relationship in the child's best interest"; "the child's bond with caregivers"; the child's "need for permanency and stability"; and "the potential risk of harm if returned to the parents' care." *See In re G.J.C.*, 2016 UT App 147, ¶ 24 (quotation simplified). It may consider the parent's "demeanor," "attitude toward his or her child," and "attitude in fulfilling parental obligations," *see In re T.E.*, 2011 UT 51, ¶ 44, 266 P.3d 739, and it may weigh the benefits of the child continuing a relationship with an unfit

parent even where reunification is not an option, examine the child's prospects for adoption, and even consider the child's preferences in some circumstances, *In re D.R.A.*, 2011 UT App 397, ¶¶ 19, 21, 266 P.3d 844; *see also In re B.T.B.*, 2018 UT App 157, ¶ 56. Moreover, as part of the best interest analysis, Utah law requires courts to "analyze whether termination of a child's parent's rights is 'strictly necessary,'" that is, the court must "explore whether other feasible options exist that could address the specific problems or issues facing the family, short of imposing the ultimate remedy of terminating the parent's rights." *In re B.T.B.*, 2018 UT App 157, ¶¶ 50, 55; *see also* Utah Code Ann. § 78A-6-507(1) (LexisNexis 2018) ("Subject to the protections and requirements of Section 78A-6-503, *and if the court finds strictly necessary*, the court may terminate all parental rights with respect to a parent if the court finds any one of the following [statutory factors] . . . ." (emphasis added)).

¶15     In conducting its best interest analysis, the juvenile court did not take the holistic approach that has been prescribed by this court. Rather than examining the totality of all circumstances affecting Child's best interest, the court erroneously interpreted *In re G.J.C.*, 2016 UT App 147, 379 P.3d 58, as articulating a best interest test composed of only three specific factors: (1) "bond with caregivers," (2) "need for permanence and stability," and (3) "the potential risk of harm if returned to the parent's care." *See id.* ¶ 24. Further, the court's finding that termination was "strictly necessary" was conclusory and did not include an examination of feasible alternatives to termination, as required by *In re B.T.B.*, 2018 UT App 157, 436 P.3d 206.[3]

---

3. Father argues that the juvenile court was not required to engage in the "strictly necessary" analysis prescribed by *In re B.T.B.* because that case was decided after the court issued its oral ruling in this case. However, Father makes no effort to explain why we should not apply this analysis. The "strictly

(continued…)

¶16   The court's reliance on only the three specific factors gleaned from *In re G.J.C.* unduly narrowed the "broad," "holistic" best interest test, *see In re B.T.B.*, 2018 UT App 157, ¶ 47, and its order did not accurately represent the direction given by this court in *In re G.J.C.*[4] The three factors identified in *In re G.J.C.* were not given as a definitive list of factors; rather the court stated that those three factors were "proper" factors to consider "in the context of a best-interest determination." 2016 UT App 147, ¶ 24. Indeed, the court explicitly instructed that a best interest determination must be "based on the totality of the circumstances." *Id.* This court reaffirmed and elaborated on this "holistic" approach in *In re B.T.B.*, when it instructed "courts to examine all of the relevant facts and circumstances surrounding

_____

(…continued)

necessary" language has been part of the statute since 2012, Act of March 7, 2012, ch. 281, § 6, 2012 Utah Laws 1331, 1334; *In re B.T.B.* merely interpreted that statutory language. And upon interpreting the language, the *In re B.T.B.* court sent that case back to the trial court for reconsideration: "Because we clarify and partially reformulate the test for termination of parental rights, we remand this case to the juvenile court for reconsideration in light of this opinion." 2018 UT App 157, ¶ 2, 436 P.3d 206, *cert. granted*, 440 P.3d 692 (Utah 2019). Father also fails to acknowledge that the juvenile court's final written order was actually signed one month after *In re B.T.B.* was issued. We therefore reject Father's assertion that the court's failure to engage in a more thorough "strictly necessary" analysis should be ignored on appeal.

4. *In re G.J.C.* has limited utility in any event because it employed the now-disavowed principle that "where grounds for termination are established, the conclusion that termination will be in a child's best interest follows almost automatically." 2016 UT App 147, ¶ 25, 379 P.3d 58 (quotation simplified); *see also In re B.T.B.*, 2018 UT App 157, ¶¶ 22–44 (disavowing the "almost automatically" line of cases).

the child's situation" and, in particular, "to explore whether other feasible options exist that could address the specific problems or issues facing the family, short of imposing the ultimate remedy of terminating the parent's rights," in order to satisfy the legislature's requirement that termination be limited to circumstances where it is "strictly necessary." 2018 UT App 157, ¶¶ 47, 54–55.

¶17 Because of the court's narrow focus on only three factors pertaining to the best interest analysis, its findings do not reveal whether the court considered a number of additional factors relevant to determining if termination of Mother's rights was in Child's best interest, including the fact that Child's prospects for adoption by Fiancée were speculative, Child's bond with Mother and any benefits of him continuing a relationship with Mother, and the effect of termination on Child's relationship with his extended family, including his half-sister.[5] Further, while the court's analysis emphasized Child's need for stability, it is unclear how terminating Mother's parental rights would achieve that goal. Child was not in DCFS custody or a short-term placement with a foster family with an unsettled future. Rather, Father had permanent sole legal and physical custody of Child. Child would continue to be raised primarily by Father and Fiancée, regardless of whether Mother's parental rights were terminated. And while termination would free Child for adoption by Fiancée, Fiancée was not in an immediate position

---

5. Our analysis should not be construed as prohibiting courts from focusing on those factors that it finds to be most probative in a particular case; not every factor will be relevant in every case, and even where evidence of a particular factor is present, a court may reasonably discount the factor and decline to discuss it in detail in its findings. The court's ruling in this case is problematic not because it focused on limited relevant factors but because it misconstrued the best interest test as being limited to those factors and because it did not examine the feasibility of less-drastic alternatives to termination.

to adopt Child, and it was not certain that she would ever be in such a position, as she and Father were not actually married. Even the danger anticipated by the juvenile court if Mother eventually resumed her relationship with her co-defendant was mostly speculative, as the co-defendant would not be released from prison for many years. *See In re D.R.A.*, 2011 UT App 397, ¶ 21 (determining that the State had failed to establish that termination was in a child's best interest in part because "the benefits of severing" the parent–child relationship were "too speculative"). Finally, the court's determination that termination was strictly necessary was not supported by an appropriate exploration of feasible alternatives to termination. *See In re B.T.B.*, 2018 UT App 157, ¶ 55. Therefore, the juvenile court's findings do not support its determination that termination was in Child's best interest.

CONCLUSION

¶18   Because the juvenile court did not employ the correct holistic analysis in assessing whether termination of Mother's parental rights was in Child's best interest and its findings do not support such a determination, we vacate the court's order terminating Mother's parental rights and remand for further proceedings consistent with this opinion.[6]

————————

6. Our decision should not be read as dictating any particular result on remand. Indeed, any number of circumstances may have changed since trial, and the court should take such changes into account in reconsidering its decision. On remand, the court should expand its analysis of best interest to consider the totality of the circumstances, examine the feasibility of alternatives to termination, supplement its findings, and assess whether termination is in Child's best interest in light of any such supplemental findings.